# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

MATTHEW DECKER,                              Case No. 22-CV-510 (NEB/JFD)

          Plaintiff,

v.                                           ORDER ON MOTION TO DISMISS

HSBC BANK USA, N.A.,

          Defendant.

---

Matthew Decker was employed by HSBC Bank USA, N.A. In 2021, he accepted a new position in HSBC's Chicago office, with the understanding that he could work remotely from Minnesota part of the time. After Decker moved to Minnesota and started working remotely, HSBC informed him that he must work only in Illinois. Decker balked at this requirement, and HSBC terminated him without cause. Decker sued HSBC alleging breach of contract, violation of Minnesota Statute Section 181.13, and promissory estoppel. He also seeks a declaratory judgment that he is not required to pay HSBC for his relocation expenses. HSBC moves to dismiss two of the four claims: the claim for breach of contract and the claim for promissory estoppel. For the reasons below, the Court grants the motion as to breach of contract and denies the motion as to promissory estoppel.

## BACKGROUND[1]

The operative complaint alleges that Decker worked for HSBC and its affiliates for nearly six years. (ECF No. 19 ("Compl.") ¶¶ 12, 18.) Decker was working out of HSBC's London, U.K., office when a position became available in its New York office. (*Id*. ¶¶ 12, 14.) Decker expressed interest in applying for this position, but he said he wanted to live in and work from Minnesota. (*Id*.) HSBC relocated the position to Chicago—the closest HSBC location to Minnesota—with the understanding that Decker would work partially out of the Chicago office and partially remotely from Minnesota. (*Id*. ¶ 15.) "HSBC promised Mr. Decker that he could work remotely from Minnesota some portion of the time, and it made that promise to induce Mr. Decker to continue working for HSBC rather than seek a job with another company . . . ." (*Id*.)

With that promise, Decker applied for the Chicago position, and HSBC offered him the job. (*Id*. ¶¶ 16–17.) HSBC's offer letter did not identify the position's physical location or discuss how much time Decker had to work in person in the Chicago office or remotely from Illinois. (*Id*. ¶ 17; ECF No. 24 at 3–7.) "[B]ased on HSBC's commitment that [Decker] would be able to work remotely from Minnesota and at the Chicago office in-person on an as-needed basis," Decker accepted the position. (Compl. ¶ 23; *see id*. ¶ 17).

---

[1] The Court draws the following background from the complaint, accepting as true all its factual allegations and drawing all reasonable inferences in favor of the nonmovant. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

Decker moved with his family to Minnesota and began working remotely in June 2021. (*Id.* ¶¶ 25, 26.) The day after he began work, HSBC informed Decker that he would need to "work from the HSBC office in Chicago at least 50% of the time" and would need to change his home address to Illinois. (*Id.* ¶ 29.) Decker contacted HSBC management, seeking "clarity" about the time he was expected to work in-person in the Chicago office. (*Id.* ¶ 30.) He received no further direction. (*Id.*) "Given the uncertainty, Mr. Decker decided to wait to rent a Chicago apartment until he received clarity from management and human resources around the expectations related to his in-person work in the Chicago office and his presence in Illinois at other times." (*Id.* ¶ 31.) Decker worked remotely from Minnesota for the rest of June and July. (*Id.* ¶ 32.)

In early August, HSBC informed Decker that "he could not work from Minnesota at all" and that he would need to "work in Illinois 100% of the time—even when he was working remotely." (*Id.* ¶ 34.) A few days later, Decker told HSBC that "he did not 'feel comfortable committing to work in Illinois 100% of the time,'" and HSBC responded by "tak[ing] this as [Decker's] resignation." (*Id.* ¶¶ 38–39.) The next week, Decker explained that he was not resigning, and attempted to communicate with HSBC management and human resources to resolve the issue. (*Id.* ¶¶ 40–42.) Two weeks after that, HSBC involuntarily terminated Decker "without cause." (*Id.* ¶¶ 43–44.)

HSBC moves to dismiss Decker's claims for breach of contract for failure to pay severance (Count II) and promissory estoppel (Count IV).

# ANALYSIS

## I.      Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Horras v. Am. Cap. Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. At this stage in the litigation, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in Decker's favor. *Topchian*, 760 F.3d at 848. The Court assesses the plausibility of the complaint considering only the materials that are necessarily embraced by the pleadings and are exhibits to the complaint. *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 850 (8th Cir. 2020).

## II.     Count II: Breach of Contract – Severance Pay

HSBC moves to dismiss Decker's breach-of-contract claim for failure to pay severance. Decker does not oppose the dismissal of this claim. (ECF No. 32 at 2 n.1.) Accordingly, the Court grants HSBC's motion. Count II is dismissed with prejudice.

### III.     Count IV: Promissory Estoppel

HSBC also seeks dismissal of Decker's promissory-estoppel claim. Promissory estoppel "impl[ies] a contract in law where none exists in fact." *Grouse v. Grp. Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981). To recover under promissory estoppel, a plaintiff must allege: "(1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 834 (Minn. 2011). "When, as here, the facts alleged in the complaint are taken as true, whether the facts rise to the level of promissory estoppel is a question of law." *Gatto v. 3D/Int'l, Inc.*, 155 F. App'x 950, 951 (8th Cir. 2005) (citing *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 740 (Minn. 2000)).

*Employment-related promissory-estoppel claims.* HSBC first argues that Count IV should be dismissed because it does not fall within the employment-related promissory estoppel claims recognized by Minnesota courts. HSBC asserts that Decker's promissory-estoppel claim does not allege "a clear and definite promise of long-term employment terminable only for cause." *Friedman v. BRW, Inc.*, 40 F.3d 293, 297 (8th Cir. 1994). It also contends that Decker's claim does not fall within an exception to the general rule that offers of at-will employment are not clear-and-definite promises. (ECF No. 23 at 11 (citing *Burns v. Kraft Foods N. Am. Inc.*, No. 03-CV-5051, 2004 WL 2283548, at *3 (D. Minn. Aug. 26, 2004)).)

5

HSBC relies on an unpublished Eighth Circuit opinion to assert that Minnesota recognizes limited promissory-estoppel claims in the employment context, which states:

> Minnesota courts recognize two types of promissory estoppel claims in the employment context. First, courts protect at-will employees whose future employers renege on offers of employment prior to, or upon, the first day of work. *See Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981); *Gorham v. Benson Optical*, 539 N.W.2d 798, 801–802 (Minn. Ct. App. 1995). Second, courts protect definite-term employees when employers terminate them before the expiration of their terms. *See Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 378 (Minn. Ct. App. 1984).

*Stoll v. C.P. Rail Sys.*, 242 F.3d 376, 376 (8th Cir. 2000).[2] Decker agrees that he does not fall within these categories. He worked in the Chicago position for two months before he was terminated. (Compl. ¶¶ 26, 43–44.) And he recognizes that he was an at-will employee, and that HSBC was not required to employ him for a specific period. (*Id.* ¶ 9; ECF No. 32 at 5.) Instead, Decker bases Count IV on HSBC's alleged promise to let him work remotely from Minnesota.

HSBC's argument falls flat. Minnesota courts have recognized other types of employment-related promissory-estoppel claims similar to the one here. For example, in 2011, the Minnesota Supreme Court considered a promissory-estoppel claim based on a nondurational term of employment. *Park Nicollet*, 808 N.W.2d at 834. There, the claim stemmed from an employer's failure to honor its promise to let an employee be "exempt

---

[2] It is unclear whether the Eighth Circuit in *Stoll* intended to limit all Minnesota employment-related promissory estoppel claims. Although the unpublished opinion contains few facts, it appears the employee's claim was based on his termination, rather than any nondurational term of his employment. *Stoll*, 242 F.3d at 376.

from night call without salary reduction." *Id.* That promise allegedly induced the employee to continue working for the employer for years. *Id.* The complaint alleged that the employer "should have reasonably expected" its promise would "induce action or forbearance" by the employee. *Id.* And it alleged that injustice could be avoided only by enforcing the promise. *Id.* The Minnesota Supreme Court determined that the promissory-estoppel claim "would have survived a motion to dismiss for failure to state a claim."[3] *Id.*; *see also Elsherif v. Mayo Clinic*, No. 18-CV-2998 (DWF/KMM), 2021 WL 1634797, at *15 (D. Minn. Apr. 27, 2021) (evaluating an employer's promise to publish an employee's research).

The promise not to work night shifts falls outside the *Stoll* categories, so *Park Nicollet* suggests that Minnesota courts recognize promissory-estoppel claims in other employment contexts. Accordingly, the Court concludes that Minnesota law does not limit promissory-estoppel claims in the employment context to the circumstances identified by HSBC, and will not dismiss Decker's claim on that basis.[4]

---

[3] The Minnesota Supreme Court separately concluded that the employee failed to bring his claims within the statute of limitations, and therefore his claims for breach of contract and promissory estoppel were barred. *Park Nicollet*, 808 N.W.2d at 834–38.

[4] Another court in this district recently declined to decide "whether Minnesota law imposes categorical limitations on the promissory estoppel doctrine's application to terms of employment other than for-cause limitations" because the plaintiff failed to establish a clear-and-definite promise "regarding . . . the location where he would work." *Colnoe v. Honeywell Int'l, Inc.*, No. 19-CV-01638 (SRN/DTS), 2021 WL 2590172, at *3 (D. Minn. June 24, 2021). This Court addresses this issue because, as explained below, Decker alleges sufficient facts to survive a motion to dismiss his promissory-estoppel claim.

Having concluded that Decker's claim is valid under Minnesota law, the Court turns to whether he sufficiently alleges the only promissory-estoppel element challenged by HSBC: whether HSBC made a clear and definite promise.

*Clear and definite promise.* Under Minnesota law, a clear-and-definite promise requires that "the promisor should reasonably expect to induce action or forbearance on the part of the promisee." *Martens*, 616 N.W.2d at 746. "The element is satisfied by an unambiguous statement indicating 'a clear and definite commitment.'" *Heffron v. Burlington N. & Santa Fe Ry. Co.*, No. A11-2039, 2012 WL 3262968, at *2 (Minn. Ct. App. Aug. 6, 2012) (citing *Faimon*, 540 N.W.2d at 882). Vague assertions are not enough. *See Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 371–72 (Minn. 1995) (holding that an employer's comment that "[g]ood employees are taken care of" was "not 'clear and definite' enough to support a claim for promissory estoppel"). But "more measurable promises, ones that can be clearly kept or broken, can suffice." *Louis Degidio, Inc. v. Indus. Combustion, LLC*, No. 19-CV-2690 (JRT/ECW), 2020 WL 4676289, at *5 (D. Minn. Aug. 12, 2020) (citing *Park Nicollet*, 808 N.W.2d at 834).

HSBC asserts that Decker fails to allege a clear-and-definite promise about his ability to work from Minnesota. HSBC focuses on the complaint's lack of specificity about Decker's remote-work schedule, including his allegation that HSBC had not "articulated . . . the precise amount of time that they expected Mr. Decker to work in-person in the Chicago HSBC office or the amount of time that Mr. Decker would need to

be in Illinois when he was not working in-person in the Chicago office." (*See* Compl. ¶ 27.) It also points to Decker's allegation that he sought "clarity" about the time he was expected to work in-person in the Chicago office, but received no further direction. (*Id.* ¶ 30; *see id.* ¶ 31 (alleging that, given this "uncertainty," Decker held off on renting a Chicago apartment "until he received clarity" about HSBC's expectations).) But HSBC allegedly promised that Decker would be able to "work remotely from Minnesota for *at least a portion of the time* he performed his HSBC role." (*Id.* ¶ 73 (emphasis added); *see id.* ¶ 27 (similar).)

Taking the alleged facts as true and drawing all inferences in Decker's favor, Decker has alleged that HSBC made a clear-and-definite promise that he would be able to work from Minnesota at least part of the time throughout his employment. After Decker moved himself and his family to Minnesota in reliance on that promise and began working from Minnesota, HSBC allegedly broke that promise by requiring Decker to work 100% of the time from Illinois. (*Id.* ¶¶ 25–26, 32, 34.) Even though Decker does not allege a particular proportion of time that he was allowed to work from Minnesota, HSBC's promise was more than a vague assertion—it was a sufficiently definite promise that could "be clearly kept or broken." *Louis Degidio*, 2020 WL 4676289, at *5 (citing *Park Nicollet*, 808 N.W.2d at 834). The Court denies HSBC's motion to dismiss Count IV.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.    HSBC's motion to dismiss (ECF No. 21) is GRANTED IN PART and

DENIED IN PART; and

2.    Count II of the Amended Complaint is DISMISSED.


Dated: October 3, 2022                    BY THE COURT:

                                          s/Nancy E. Brasel
                                          Nancy E. Brasel
                                          United States District Judge